**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

INTERNATIONAL OLYMPIC
COMMITTEE

        and

UNITED STATES
OLYMPIC COMMITTEE

              Plaintiffs,

     v.

STEPHEN P. FRAYNE JR.

        and

CITYPURE L.L.C.

           Defendants.

Case No.    4:15cv3277

**COMPLAINT FOR VIOLATION OF
THE OLYMPIC AND AMATEUR
SPORTS ACT AND THE
ANTICYBERSQUATTING CONSUMER
PROTECTION ACT, UNFAIR
COMPETITION, FALSE
DESIGNATION OF ORIGIN,
TRADEMARK INFRINGEMENT, AND
VIOLATION OF TEX. BUS. & COM.
CODE § 16.105 ON OLYMPIC
SYMBOLS**

## COMPLAINT

Plaintiffs, the International Olympic Committee ("IOC"), a foreign corporation located in

Chateau de Vidy, Lausanne, 1007 Switzerland, and the United States Olympic Committee

("USOC"), a federally chartered corporation with its principal place of business in Colorado

Springs, Colorado, (jointly hereafter the "Olympic Plaintiffs"), state the following for their

complaint against Defendants, Stephen P. Frayne Jr. and his company, CityPure L.L.C.

("CityPure"), doing business at 20031 Pine Wind Drive, Humble, Texas 77346.

## NATURE OF THE SUIT

1.     This is an action to address violations of the Olympic and Amateur Sports Act, 36 U.S.C.

        § 220506, cybersquatting, unfair competition and false designation of origin, and

trademark infringement, brought under the Lanham Act, 15 U.S.C. § 1051 et seq., and violations of the Tex. Bus. & Com. Code § 16.105 on OLYMPIC SYMBOLS. It is brought by the Olympic Plaintiffs to enjoin Defendants from continuing to exploit for commercial gain the goodwill Plaintiffs have accrued in names associated with the Olympic Games.

2.      Since the inception of the modern Olympic Games in 1896, from Athens 1896 to the present, each Olympic Games has been identified by a name combining the host city and even-numbered year ("Olympic City/Year names").

3.      For over one hundred years, Plaintiff International Olympic Committee ("IOC") has owned intellectual property rights in the Olympic City/Year names associated with the Games—such as SALT LAKE CITY 2002 and LONDON 2012.

4.      Plaintiff IOC, the National Olympic Committees ("NOCs"), including Plaintiff the United States Olympic Committee ("USOC"), and Organizing Committees for the Olympic Games and host cities for the Olympic Games use the Olympic City/Year names in connection with TV broadcasts, advertisements, sponsors, licensees, ticket sales, sales of goods, and the like, and routinely register trademarks reflecting the Olympic City/Year names.

5.      Fully aware of this Olympic City/Year naming pattern, Defendant Frayne and his company, Defendant CityPure L.L.C., have sought to exploit for commercial gain the goodwill the IOC and the National Olympic Committees have developed in the Olympic Games by speculatively registering and stockpiling hundreds of domain names consisting of Olympic City/Year names, such as Tokyo2020.com and LosAngeles2024.org, many

years in advance of the Olympic Games, and cybersquatting upon them in the hope that they will match valuable Olympic bid or host cities—all to Olympic Plaintiffs' detriment.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367, as the claims asserted herein present federal questions under the Lanham Act and pertain to trademarks and unfair competition, and the Court has supplemental jurisdiction over the claims brought under Texas law.

7.   Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because, upon information and belief, it is where Defendants maintain their principal place of business and/or where a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred.

## THE PARTIES

8.   Plaintiff International Olympic Committee ("IOC") is a foreign corporation with a principal place of business in Chateau de Vidy, Lausanne, 1007 Switzerland.

9.   Plaintiff United States Olympic Committee ("USOC") is a federally chartered non-profit corporation with its principal place of business in Colorado Springs, Colorado.

10.   Upon information and belief, Defendant CityPure L.L.C. is a Limited Liability Company organized and existing under the laws of Delaware, with a principal place of business at 20031 Pine Wind Drive, Humble, Texas 77346.

11.   Upon information and belief, Defendant Frayne is the founding member of CityPure L.L.C., residing at 20031 Pine Wind Drive, Humble, Texas 77346.

## BACKGROUND

### THE OLYMPIC PLAINTIFFS AND HISTORY OF THE OLYMPIC GAMES

12.     Plaintiff IOC is an international, non-governmental, non-profit organization founded on
June 23, 1894 as the umbrella organization of the Olympic Movement. In 1896, under the
IOC's direction, Athens, Greece hosted the first Olympic Games of the modern era.
Since 1896, the IOC has supervised the organization of the Olympic Games, during
which time the Games have become a world-renowned, international, multiple-sport
athletic event. The IOC has conducted 21 Olympic Winter Games and 30 Olympic
Summer Games, most recently the 2014 Olympic Winter Games in Sochi, Russia.

13.     The IOC's mission is to promote Olympism throughout the world, and to contribute to
build a peaceful and better world through sport practiced in accordance with Olympism
and its values.

14.     As leader of the Olympic Movement, the IOC is responsible for enhancing the values of
the Olympic Movement and for providing material support to efforts to organize,
disseminate, and market the Olympic Games. The IOC works with National Olympic
Committees in over 200 countries and territories to promote the principles of the Olympic
Movement, providing those participating in the Olympic Games with direct financial
assistance. Plaintiff USOC is the National Olympic Committee for the United States.

15.     Plaintiff IOC is the owner of all rights in and to the Olympic Games and Olympic
intellectual properties described below, which are used to generate revenues for such
purposes. For the same purposes, in the United States, Plaintiff USOC is granted
exclusive use of Olympic names and insignia by the Olympic and Amateur Sports Act
("OASA"). The constituents of the Olympic Movement include NOCs, including the
USOC, International Sport Federations and athletes. Because the Olympic Movement and

its constituents benefit from and indeed rely on these revenues, it is vital to the IOC that all such rights and Olympic properties be afforded the greatest possible protection by all concerned and that the use thereof be approved by the IOC.

**PLAINTIFFS' INTELLECTUAL PROPERTY AND THE CITY & YEAR MARKS**

16.    The IOC owns all rights to the Olympic Games, the Olympic symbol, the Olympic flag, motto and anthem, the word Olympic, and other marks associated with the Olympic Games.  The Olympic Charter, which details the rights and responsibilities of the IOC and members of the Olympic Movement, states the "Olympic Games are the exclusive property of the IOC which owns all rights relating thereto, in particular, and without limitation, all rights relating to (i) the organisation, exploitation and marketing of the Olympic Games." In the United States, the OASA effects those protections by enabling Plaintiff USOC to enforce those exclusive rights in Olympic names and insignia.

17.    The Olympic Games are organized following the distinctive Olympic format of staggered Summer and Winter Games, each held in even-numbered, four-year intervals. Beginning in 1896, the Summer and Winter Olympic Games took place every four years, in the same even-numbered year. Starting in 1992, the Summer and Winter Olympic Games were staggered, so that an event occurred every two years. Following this staggered pattern, the Summer Olympic Games continue to be held four years apart on even-numbered years, as are the Winter Olympic Games.

18.    Reflecting this long-standing tradition in the Olympic Movement, the IOC has—for over one hundred years—used names combining the city name and the even-numbered year of the event as trademarks to designate and differentiate each Olympic Games. Such names include ATHENS 1896, BARCELONA 1992, SYDNEY 2000, TURIN 2006, BEIJING 2008, VANCOUVER 2010, LONDON 2012, and TOKYO 2020. For example, medals

5

awarded during the 1896 Olympics in Athens, Greece were emblazoned with the ATHENS 1896 mark (in Greek). Posters from the 1912 Olympic Games in Stockholm, Sweden contained the STOCKHOLM 1912 mark.

19.     As a result of the Olympic Plaintiffs' consistent use and registration of Olympic City/Year names as trademarks, and their extensive investment in developing the goodwill associated with the Olympic Games, these names—and the Olympic City/Year naming pattern itself—are widely recognized by the public as identifiers of the IOC, the National Olympic Committees, and the Olympic Movement.

20.     The IOC, the National Olympic Committees, including Plaintiff USOC, Organizing Committees for the Olympic Games, and host cities consistently take measures to protect the Olympic City/Year names associated with the Olympic Games. For example, the IOC and the USOC have obtained federal trademark registrations for numerous Olympic City/Year names for prior Olympic Games, including BEIJING 2008, VANCOUVER 2010, LONDON 2012, and TOKYO 2020. Illustrative examples of Olympic City/Year names the IOC or the USOC have in the past registered as trademarks are attached as **Exhibit A**.

21.     The goodwill associated with Olympic Plaintiffs' Olympic City/Year names is a valuable asset vital to ensure their long-term ability to help fund the Olympic Movement. The IOC and USOC receive no government funding; their revenues are derived primarily from the sale of television rights for broadcasting the Olympic Games and from marketing, licensing, and sponsorship programs related to use of the Olympic intellectual property rights.

22.   The IOC's licensed broadcasts of the Olympic Games on television reach a global
audience that few broadcasts, if any, can match. For example, the LONDON 2012
SUMMER GAMES were broadcast to an estimated 3.6 billion viewers in 220 nations and
territories. These viewing numbers underscore the fact that the Olympic City/Year names
are some of the most well-known in the world.

23.   The IOC also extensively uses and/or licenses others to use its Olympic City/Year names
in global marketing programs. These marketing programs include worldwide sponsorship
agreements with Olympic partners such as Coca-Cola, Samsung, and Visa, as well as
local partners. As a result of these sponsorship and license agreements, the IOC's
worldwide sponsors contribute hundreds of millions of dollars to help fund each Olympic
Games. In turn, the IOC distributes over 90% of its revenues to organizations throughout
the Olympic Movement to support the staging of the Olympic Games and to promote the
worldwide development of sport.

24.   Many nations, including the United States, the United Kingdom, Australia, Greece,
Canada, China, and Russia, have passed national legislation to protect the intellectual
property of the IOC and its National and city Organizing Committees, as mandated in the
Olympic Charter. In the United States, the OASA not only grants the USOC exclusive
use of select Olympic names and symbols, but also bars unauthorized parties from
making commercial use of "any trademark, trade name, sign, symbol, or insignia falsely
representing association with, or authorization by, the International Olympic
Committee...." 36 U.S.C. § 220506(c)(4).

25.   Similarly, the laws of the State of Texas also prohibit the use of a trademark, trade name,
sign, symbol, or insignia falsely representing association with or authorization by the IOC

or the USOC for the purpose of trade or to induce the sale of goods or services. Tex. Bus. & Com. Code § 16.105 on OLYMPIC SYMBOLS.

26.     The IOC and the National Olympic Committees continuously defend against unauthorized use of Olympic City/Year names in Internet domain names. For example, in an *in rem* lawsuit filed in 2000 under the Anticybersquatting Consumer Protection Act, the IOC, joined by the USOC and the Salt Lake Organizing Committee, successfully brought suit to cancel or recover nearly 1,800 Internet domain names that were making unauthorized use of the OLYMPIC marks, including ATHENS 2004 and BEIJING 2008. *U.S. Olympic Comm., Int'l Olympic Comm., and Salt Lake Org. Comm. for the Olympic Winter Games of 2002 v. 2000olympic.com, et al.*, 1:00-CV-01018-CMH (E.D. Va., filed June 20, 2000).

27.     Similarly, the IOC and the National Olympic Committees have successfully protected the Olympic City/Year names—including TURIN 2006, BEIJING 2008, VANCOUVER 2010, NANJING 2014, and LILLEHAMMER 2016—in Uniform Domain Name Dispute Resolution Policy ("UDRP") proceedings. These UDRP panels have recognized the special circumstances that give the IOC prior rights in Olympic City/Year domain names, based in part on the OASA protections, as well as comparable protections in other countries, and that the IOC has owned rights in such marks associated with the Olympic Games for over 100 years.

28.     By virtue of the aforementioned extensive use, recognition, and protection for over 100 years, Olympic Plaintiffs' Olympic City/Year names—and the naming pattern itself—are distinctive, famous, world-renowned, and entitled to broad protection under national laws throughout the world, including in the United States and the State of Texas.

**Defendants' Unlawful Actions**

29.     Upon information and belief, Defendants have registered at least 1,459 domain names consisting of a City name and an even-numbered year, each of which are in four-year intervals corresponding to the years in which Olympic Summer Games are held.

30.     Many of these Olympic City/Year domain names were registered decades before the Olympic Games would be held.

31.     Upon information and belief, Defendant Frayne and/or Defendant CityPure currently own at least 177 Olympic City/Year domain names, including Tokyo2020.com, Rome2024.com, Paris2024.com, LosAngeles2024.com, LosAngeles2024.org, LA2024.com, LA2024.org, Brisbane2028.com, NewDelhi2028.com, Capetown2024.com, Capetown2024.org, NewDelhi2028.org, Johannesburg2024.com, Johannesburg2024.org, and Madrid2028.org. **Exhibit B** identifies domain names currently owned by Defendants of which Plaintiffs are aware.

32.     Because the process of bidding on and hosting the Olympic Games is a unique and complex endeavor—requiring years of careful planning and coordination—cities that have bid on or hosted the Olympic Games are well-equipped, and therefore many re-bid, to host other Games. Following this trend, Defendants, upon information and belief, register domain names of former bid and host cities of Summer Olympic Games. For example:

  a.  Los Angeles hosted the Games in 1932 and 1984. Defendants registered la2024.com, la2024.org, la2028.com, la2028.org, la2032.com, la2032.org, la2036.com, la2036.org, la2040.com, la2040.org, losangeles2024.com, losangeles2024.org,

losangeles2028.com, losangeles2028.org, losangeles2032.org, losangeles2036.com, losangeles2036.org, losangeles2040.com, and losangeles2040.org.

b.   Mexico hosted the Games in 1968 in Mexico City. Defendants registered, mexicocity2024.org, mexicocity2028.com, mexicocity2028.org, mexicocity2032.com, and mexicocity2036.com.

c.   In 1964, Japan hosted the Olympics in Osaka and Tokyo. Defendants registered osaka2024.com, osaka2024.org, osaka2028.com, osaka2028.org, osaka2032.com, osaka2036.com, tokyo2020.com, tokyo2024.com, and tokyo2028.org.

d.   In 1960, Rome hosted the Games. Defendants registered roma2028.com, roma2028.org, rome2020.com, rome2024.com, and rome2028.org.

e.   Paris hosted the Summer Games in 1924. Defendants registered paris2024.com, paris2028.org, paris2032.com, paris2032.org, paris2036.com, and paris2040.org.

33.   In 2008, when the USOC sought to recover Chicago2016.com from Mr. Frayne in a UDRP proceeding, Mr. Frayne filed a complaint in the District Court for the Northern District of Illinois, averring that he acquired the domain name solely to establish a *bona fide* noncommercial forum for an "open and honest discussion" about the Olympic Games. This complaint is attached as **Exhibit C**. Mr. Frayne framed the case as "an important battle for First Amendment rights and the use of the internet as a forum to foster debate over a topic that deserves to be discussed." Assuring the Court and the plaintiff that his was protected speech, Mr. Frayne swore under oath that he did not intend to profit commercially from the goodwill of the USOC, the plaintiff in that case, or to use his domain names for the purpose of trade.

34.     Taking Mr. Frayne at his word, made under oath, the USOC thereafter settled the suit with Mr. Frayne in 2009, and dismissed its counterclaims without prejudice, in reliance on Mr. Frayne's representations that he would use such domain names solely as a forum for discussion, and would not commercialize them.

35.     But in 2014, when Plaintiff IOC attempted to acquire Tokyo2020.com for use by the Tokyo Organizing Committee in connection with the Tokyo2020 Olympic Games, its efforts were blocked by Defendants' prior registration of that domain name. The IOC then discovered a videotaped pitch Defendant Frayne made to potential investors at the Rice University's Technology Venture Forum. In this video, posted online, Defendant Frayne admitted that he "make[s] money by monetizing the world-wide tremendous interest in the Olympics" and that he purposely purchased almost every domain name following the Olympic City/Year "naming pattern." He claimed there was "money to be made" online through websites providing housing, tickets, and other services related to the Olympic Games, and that he provides "all those sorts of services." He claimed to have already raised $455,000 from investors for this scheme, and noted that "[i]n the coming round, [he is] looking to raise 300,000 dollars more." A transcript of the video is attached as **Exhibit D**.

36.     As Olympic Plaintiffs discovered in 2014, Defendant Frayne either misrepresented under oath his claimed intention to use the Olympic City/Year domain names solely for noncommercial discussion sites, or materially changed his intentions from a noncommercial to a commercial purpose: to "make money by monetizing the world-wide tremendous interest in the Olympics."

37.     None of the domain names Defendants currently own resolve to a discussion forum.
        Indeed, of the nearly 1500 Olympic City/Year domain names registered by Defendants,
        only one—Chicago2016.com—ever temporarily resolved to a website discussing the
        Olympic Games, and only after the USOC filed a UDRP Complaint against Defendant
        Frayne. On information and belief, Defendants have not developed any other discussion
        forum for any of the other domain names. Indeed, Defendants are not hosting a
        discussion forum for the Tokyo 2020 Games, even though Tokyo is a host city for the
        2020 Olympic Games.

38.     Upon information and belief, some of the Defendants' Olympic City/Year domain names
        resolved to a web page titled "Future Discussions," with no other content. Others hosted
        pay-per-click ads. But today, with the exception of Tokyo2020.com (the only selected
        host city), all redirect to Defendant Frayne's new website, http://citypure.org/forbidden/,
        which contains no discussion forum. Tokyo2020.com redirects to citypure.org, which is a
        web page with the message: "A Balanced Discussion. hosted at
        http://www.tokyo2020.com courtesy of CityPure L.L.C."

39.     Upon information and belief, in the past, Defendants also have directed a number of their
        Olympic City/Year domain names to the website of a Chinese company also trading as
        "City Pure." But neither Defendant Frayne nor Defendant CityPure has any connection to
        the Chinese company, which has no affiliate or distributor in the United States.

40.     Upon information and belief, many of Defendants' Olympic City/Year domain names
        have been acquired by other cybersquatters, without ever having been used for any
        legitimate purpose, such as a discussion forum about the Olympic Games.

41.    Moreover, upon information and belief, Defendants allowed their registrations in certain Olympic City/Year domain names to lapse, then reacquired the domain names using privacy and proxy services, which hid their contact information and frustrated Olympic Plaintiffs' efforts to connect these domain names to Defendants.

42.    Upon information and belief, Defendant CityPure provides no goods or services and has no apparent purpose other than to acquire and monetize Olympic City/Year domain names.

43.    Despite Defendant Frayne's assurances under oath in the prior litigation with Plaintiff USOC, he has since evinced his true purpose for these domain names—to exploit and capitalize on the distinctive and recognizable Olympic City/Year naming pattern, and the goodwill associated with it, for personal monetary gain.

44.    Defendants' continued registration, stockpiling, and commercial use of these Olympic City/Year domain names with the goal of monetizing them has been in bad faith and has harmed and will continue to harm the Olympic Plaintiffs. This conduct violates the Olympic and Amateur Sports Act and Tex. Bus. & Com. Code § 16.105, and constitutes cybersquatting, false designation of origin, unfair competition, and trademark infringement.

45.    Olympic Plaintiffs seek an Order directing Defendants to transfer all City/Year domain names they currently hold to Olympic Plaintiffs and enjoining Defendants and those acting in active concert with them from registering or using Olympic City/Year domain names for the purpose of trading on the goodwill of the Plaintiffs and the Olympic Movement. Olympic Plaintiffs also seek damages and attorneys' fees.

## COUNT I
### Violation of the Olympic and Amateur Sports Act
### (36 U.S.C. § 220506(c))

46. Olympic Plaintiffs repeat and re-allege each and every factual averment in the preceding paragraphs of this Complaint, and incorporate them by reference.

47. In the United States, the Olympic and Amateur Sports Act ("OASA") authorizes a civil action against any person who, without the consent of the USOC, "uses for the purpose of trade, to induce the sale of any goods or services … any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee...." 36 U.S.C. Section 220506(c)(4).

48. Olympic City/year names have become distinctive as a result of the investment made in these names for over 100 years by the IOC, the National Olympic Committees, the Organizing Committees for the Olympic Games, host cities for the Olympic Games, and IOC's official sponsors and licensees. The recognizable Olympic City/year pattern is itself a signature insignia of the Olympic Games, easily recognized by consumers as associated with the Olympic Plaintiffs, and the Olympic Movement generally.

49. Defendants have purposely registered Olympic City/Year domain names in order to capitalize on Olympic Plaintiffs' Olympic City/Year naming pattern associated with the Olympic Games.

50. Defendants' acquisition of hundreds of Olympic City/Year domain names, matching potential Olympic bid or host cities and years of future Olympic Summer Games, is expressly designed to profit from this association, and the goodwill built up by Plaintiff IOC and the National Olympic Committees in the Olympic Games.

51. According to the videotaped pitch Defendant Frayne made to potential investors, Defendants "make money by monetizing the world-wide tremendous interest in the Olympics every four years." Defendants recognize the "tremendous amount of money to be made" during Olympic Games, and profit from the public interest in the Olympic Games by 1) acquiring domain names in "almost every worldwide city and four number combination [in] .com and .org" following the recognizable "naming pattern that the Olympics uses for host cities and host years," and 2) offering local services sought by consumers during the Games through these websites or 3) soliciting investments in this scheme or these services. In a nutshell, by speculatively cybersquatting on domain names that have the potential to match Olympic host cities and years corresponding to future Olympic Summer Games, Defendants expressly attempt to capitalize on the Olympic City/Year naming pattern—an insignia of the IOC—and its association with the Olympics Games.

52. Defendants promote their business scheme to attract investors. Indeed, by Defendant Frayne's express admission, Defendants have profited from this scheme already by raising approximately $455,000 from investors, and plan to raise hundreds of thousands of dollars more. Such use—and Defendants' very solicitation of investments—exploits the distinctive Olympic City/Year naming pattern and constitutes use of these names in commerce for the purpose of trade.

53. Defendants' purchase and use of these Olympic City/Year domain names in commerce without Olympic Plaintiffs' consent falsely represents association with, or authorization by, the Olympic Plaintiffs in violation of the Olympic and Amateur Sports Act, 36 U.S.C. Section 220506(c)(4).

54.   Defendants' registration, possession, and use of these Olympic City/Year domain names has been willful and in bad faith, and has caused and will continue to cause the IOC and the USOC irreparable harm if not enjoined by this Court.

**COUNT II**
**Violation of the Anti-cybersquatting Consumer Protection Act (ACPA)**
**15 U.S.C. §1125(d)**

55.   Olympic Plaintiffs repeat and re-allege each and every factual averment in the preceding paragraphs of this Complaint, and incorporate them by reference.

56.   The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), makes liable persons who, with "a bad faith intent to profit from that mark," "registers, traffics in or uses a domain name" that is either identical or confusingly similar to a "distinctive" mark or a "trademark, word, or name protected by reason of … section 220506 of Title 36" (i.e., OASA).

57.   Defendants have acquired hundreds of domain names matching likely Summer Olympic bid or host cities, in four year intervals, following the distinctive and widely recognizable Olympic City/Year pattern, in order to profit from the goodwill built up by the IOC, the National Olympic Committees, such as Plaintiff USOC, Organizing Committees for the Olympic Games, and host cities of the Olympic Games.

58.   Defendant Frayne has admitted that these City/Year combinations are associated by the public with the Olympic Games, and that he seeks to exploit this association to profit from the goodwill associated with these names, Olympic Plaintiffs, and the Olympic Movement.

59.   Defendant Frayne's admission of monetizing the Olympic City/Year combinations—in part by collecting nearly $455,000 in investment funds—demonstrates his bad faith to

intend to profit from the tremendous goodwill associated with the Olympic Plaintiffs and the Olympic Games.

60.     None of the domain names Defendants currently own host a discussion forum of any sort. Non-use of those domain names is evidence that Defendants are acquiring the names speculatively and "squatting" on them in the hope that some will become valuable (i.e., will become Olympic host cities).

61.     The stockpiling of over one hundred domain names, as here, is evidence of bad-faith cybersquatting.

62.     The misdirection of the domain names to the Chinese company's site, as well as the use of its trade name, are pretexts designed to lend the appearance of legitimacy to domain-name stockpiling and are part of an elaborate deception designed to mask Defendants' admittedly bad-faith cybersquatting enterprise.

63.     In addition to acquiring these domain names in the .COM top-level domain, Defendants are acquiring them in the .ORG top-level domain, traditionally used by the IOC for its official Olympic Games websites, which further enhances the false impression that Defendants' Olympic City/Year domain names originate with or are connected to the IOC, the National Olympic Committees, such as Plaintiff USOC, or one of the Organizing Committees for the Olympic Games. For example, Defendants have registered both LosAngeles2024.com and LosAngeles2024.org.

64.     By targeting these domain names, Defendants are effectively preventing the IOC, the National Olympic Committees, and the Organizing Committees for the Olympic Games from registering or using domain names that correspond to their names. For example, because of Defendants' scheme, it would be impossible for the IOC, the USOC, or the

Los Angeles Organizing Committee to register and use LosAngeles2024.org or LosAngeles2024.com.

65.    Such conduct is prohibited under the ACPA, which expressly prohibits the registration of a domain name containing a mark protected by the OASA, or one that falsely suggests an affiliation with the IOC.

66.    Defendants' registration, ownership, and use of these Olympic City/Year domain names has been willful and in bad faith, and has caused and will continue to cause the IOC and the USOC irreparable harm, including loss of goodwill and damages, if Defendants are permitted to continue their willful and deliberate acts of infringement.

**COUNT III**
**Unfair Competition and False Designation of Origin**
**(Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

67.    Olympic Plaintiffs repeat and re-allege each and every factual averment in the preceding paragraphs of this Complaint, and incorporate them by reference.

68.    Defendants' acquisition of hundreds of domain names matching likely Olympic bid or host cities follows the recognizable Olympic City/Year pattern.

69.    Defendant Frayne has admitted that Defendants' scheme is purposefully designed to profit from the association of these names with the Olympic Games and the goodwill built up by the IOC and the National Olympic Committees, such as Plaintiff USOC.

70.    Defendants' admission of monetizing the Olympic City/Year combinations demonstrates their bad faith to intent to profit from the famous Olympic naming pattern.

71.    Indeed, by Defendant Frayne's admission, Defendants have already raised approximately $455,000 from investors in connection with their scheme to use the Olympic City/Year naming pattern for a commercial purpose.

72.    According to the same admission, Defendants recognize the "tremendous amount of money to be made by real estate developers and construction organizations" during Olympic Games. Defendants also recognize that the public uses websites to find local services during the Games, and provide (or plan to provide) those services.

73.    Defendants know, have reason to know, and should know that they are not authorized or permitted to use Plaintiffs' Olympic City/Year names for a commercial purpose.

74.    Olympic Plaintiffs have not authorized Defendants to use domain names designed to create a false association with the Olympic Plaintiffs or the Olympic Games, and have demanded that Defendants not use the Olympic Plaintiffs' Olympic City/Year names for commercial purposes.

75.    Defendants nonetheless willfully continue to use domain names that consist of the Olympic City/Year pattern, which falsely suggests a connection to the Olympic Plaintiffs and the Olympic Movement, in contravention of the Olympic Plaintiffs' rights.

76.    The domain names used by Defendants are identical or confusingly similar to the Olympic Plaintiffs' Olympic City/Year names, and by Defendants' admission, are used to designate goods and services that are the same as or substantially similar to those provided by Olympic Plaintiffs and its authorized affiliates and sponsors of the Olympic Games. Defendants use the City/Year domain names to offer these goods and services to the same classes or types of consumers and members of the public as Olympic Plaintiffs, or their authorized affiliates, licensees, and sponsors of the Olympic Games.  This use is likely to weaken the ability of Olympic Plaintiffs, as well as their authorized affiliates and sponsors, to identify and distinguish their goods and services, and threatens to harm the ability of the Olympic Plaintiffs, as well as their authorized affiliates and sponsors, to

use the names associated with the Olympic Games for their economic advantage. It purposefully diverts revenues upon which Olympic Plaintiffs rely to fund the Olympic Movement.

77.     Defendants' continued use of these names falsely suggests an affiliation with the Olympic Plaintiffs, and will cause confusion with official websites used by the IOC, the National Olympic Committees, such as the USOC, and the Organizing Committees for the Olympic Games to promote the Olympic Games.

78.     Defendants' continued use of these domain names blocks the legitimate efforts of Plaintiff IOC and USOC and other National Olympic Committees and Organizing Committees to register Olympic City/Year domain names for use in connection with the Olympic Movement.

79.     Olympic Plaintiffs do not have control over Defendants' use of these domain names, or over the quality of goods and services Defendants provide, if any. Such uncontrolled use places Olympic Plaintiffs' marks, insignia, names, reputation, and goodwill at risk of serious injury.

80.     Defendants' use in commerce of these domain names without Olympic Plaintiffs' consent constitutes false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with the Olympic Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods and services by the Olympic Plaintiffs. These activities constitute unfair competition and false designation of origin under 15 U.S.C. § 1125(a).

81.   As a direct and proximate result of Defendants' willful and deliberate conduct, Olympic Plaintiffs have suffered, and will continue to suffer, substantial injuries, loss of goodwill, and damages if Defendants are permitted to continue their willful and deliberate acts of unfair competition and false designation of origin.

**COUNT IV**
**Federal Trademark Infringement**
**(Lanham Act § 32, 15 U.S.C. § 1114)**

82.   Olympic Plaintiffs repeat and re-allege each and every factual averment in the preceding paragraphs of this Complaint, and incorporate them by reference.

83.   Olympic Plaintiffs own U.S. trademark registrations for certain marks incorporated in their entirety in the domain names registered by Defendants, including for example TOKYO2020. *See* U.S. Trademark Registrations for TOKYO2020 attached as **Exhibit E**.

84.   As a result of the extensive investment of the IOC, the National Olympic Committees, Organizing Committees for the Olympic Games, and host cities, these and other Olympic City/Year names have become highly distinctive, and are easily recognized by consumers as associated with the Olympic Plaintiffs and the Olympic Movement.

85.   Defendants' use of the Olympic City/Year names in their domain names, including TOKYO2020.com, without authorization or consent of the Olympic Plaintiffs, trades on the goodwill associated with these names at the expense of the Olympic Plaintiffs. Indeed, Defendant Frayne admits that these names are associated with the IOC and the Olympic Movement, that his registration and use of these domain names is intended to exploit the public's association of these names with the IOC, and that he already has monetized these names for his financial benefit.

86.     Defendants claim to provide the same or substantially similar services as those provided by authorized licensees and affiliates of the Olympic Plaintiffs. Defendants' continued use of the Olympic City/Year names is likely to confuse and deceive members of the public into believing, falsely, that the goods and services allegedly offered by Defendants emanate from Olympic Plaintiffs' authorized licensees and affiliates, and/or that Defendants are associated or affiliated with Olympic Plaintiffs, or are sponsored or endorsed by Olympic Plaintiffs.

87.     Defendants' use of the Olympic City/Year names in their domain names follows the distinctive pattern of all other of the Olympic Plaintiffs' names relating to the Olympic Games. It falsely suggests Defendants' affiliation with Olympic Plaintiffs, and will cause confusion with the Olympic Plaintiffs and their authorized licensees and affiliates. Such use unfairly trades on the goodwill associated with Olympic Plaintiffs.

88.     The domain names used by Defendants are identical or confusingly similar to the Olympic City/Year names and are used to designate identical or substantially similar goods and services. Defendants offer (or plan to offer) these goods and services to the same classes or types of consumers and members of the public as Olympic Plaintiffs. Such use is likely to weaken the ability of Olympic Plaintiffs and their authorized licensees and affiliates to identify and distinguish their own goods and services, and lead to confusion, including through ambush marketing and passing off.

89.     Olympic Plaintiffs have no control over Defendants' use of the Olympic City/Year names, or over the quality of goods and services Defendants provide (or plan to provide) under them. Such uncontrolled use places Olympic Plaintiffs' marks, insignia, names, reputation, and goodwill at risk of serious injury.

90.     Defendants' activities, as described above, constitute trademark infringement of Olympic Plaintiffs' rights in its Olympic City/Year marks under 15 U.S.C. § 1114(a).

91.     Defendants have actual notice of Olympic Plaintiffs' rights in various Olympic City/year names, and have knowingly and intentionally continued to use identical or substantially similar names, causing confusion, mistake, and deception in order to reap the benefit of the goodwill and reputation of the Olympic Plaintiffs.

92.     As a direct and proximate result of Defendants' willful and deliberate conduct, Plaintiffs have suffered, and will continue to suffer, substantial injuries, loss of goodwill, and damages. Plaintiffs have been irreparably harmed, and will continue to be irreparably harmed if Defendants are permitted to continue their willful and deliberate acts of infringement.

**COUNT V**
**Violation of the Tex. Bus. & Com. Code § 16.105**
**on OLYMPIC SYMBOLS**

93.     Olympic Plaintiffs repeat and re-allege each and every factual averment in the preceding paragraphs of this Complaint, and incorporate them by reference.

94.     Olympic City/Year names have become distinctive as a result of the investment made in these names for over 100 years by the Olympic Plaintiffs. The recognizable Olympic City/Year pattern has itself become a signature insignia of the Olympic Games, easily recognized by consumers as associated with Olympic Plaintiffs and the Olympic Movement.

95.     Defendants admit that they intentionally register domain names consisting of the recognizable City/Year pattern associated with the Olympic Games and the Olympic Plaintiffs.

96.     Defendants' acquisition of hundreds of domain names matching possible Olympic bid or host cities and years, in four year intervals for future Summer Olympic Games, is expressly designed to profit from the goodwill built up by the IOC, the National Olympic Committees, such as Plaintiff USOC, the Organizing Committees, and host cities in the Olympic Games.

97.     Defendants recognize the "tremendous amount of money to be made by real estate developers and construction organizations" during Olympic Games. They also recognize that the public uses websites to find local services during the Games, and provide or aim to provide those services through their websites.

98.     Indeed, by Defendant Frayne's admission, Defendants have raised approximately $455,000 from investors in connection with their aforementioned scheme. Such use—and Defendants' very solicitation of investments—constitutes use of these domain names in commerce for the purpose of trade.

99.     Defendants' use of these domain names in commerce without Olympic Plaintiffs' consent falsely represents association with, or authorization by, Plaintiffs IOC and USOC in violation of the Tex. Bus. & Com. Code § 16.105 on OLYMPIC SYMBOLS.

100.    Defendants' use of the Olympic City/Year names in their domain names has caused and will continue to cause the IOC and the USOC irreparable harm if not enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Olympic Plaintiffs respectfully pray that the Court:

A.      Enter judgment in favor of Olympic Plaintiffs against Defendants on all claims set forth in this Complaint;

B.      Enter an order directing that all Internet domain names registered to and/or owned by Defendants containing City name and even-year designations be transferred to the IOC;

C.      Permanently enjoin Defendants, as well as their agents, successors, assigns, and all persons in active concert or participation with Defendants, directly or indirectly, from (1) using Olympic City/Year names or any confusingly similar names, (2) registering, owning, or using Internet domain names containing City name and even-year designations, and/or (3) any attempt to retain any part of the goodwill misappropriated from Olympic Plaintiffs;

D.      Enter an order that Defendants file with this Court and serve upon Olympic Plaintiffs, within thirty days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

E.      Award Olympic Plaintiffs monetary damages, including without limitation:

    a.   any and all profits Defendants have accrued as a result of their wrongful conduct;

    b.   treble damages under 15 U.S.C. § 1117(b); and/or

    c.   statutory damages under 15 U.S.C. § 1117(d), as may be elected by Olympic Plaintiffs.

F.      Award Olympic Plaintiffs interest, reasonable attorneys' fees, and costs incurred in maintaining this action, to the fullest extent allowed under law including but not limited to 15 U.S.C. § 1117; and

G.      Award such additional relief as the Court deems just and proper.

Respectfully submitted,

Dated: <u>November 5, 2015</u>        <u>/s/ Rodney Caldwell</u>
                                     Rodney Caldwell
                                     Texas Bar No. 03632000
                                     Federal Bar No. 00879
                                     Pirkey Barber PLLC
                                     600 Congress Avenue, Suite 2120
                                     Austin, TX  78701
                                     Telephone: (512) 322-5200
                                     Fax: (512) 322-5201

                                     ATTORNEY-IN-CHARGE FOR OLYMPIC
                                     PLAINTIFFS

Of Counsel:

Bruce A. McDonald
District of Columbia Bar No. 293753
James L. Bikoff
District of Columbia Bar No. 209023
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson St., N.W., Suite 400
Washington, D.C.  20007
Telephone: (202) 263-4300
Facsimile: (202) 263-4329

Jered E. Matthysse
Texas Bar No. 24072226
Federal Bar No. 1115779
Pirkey Barber PLLC
600 Congress Avenue, Suite 2120
Austin, TX  78701
Telephone: (512) 322-5200
Fax: (512) 322-5201